**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kyle Welsh, et al., | ) | No.  CV-25-01159-PHX-SPL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Rebecca Loudbear, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Before the Court is Defendants' Motion to Dismiss (Doc. 16), Plaintiffs' Response (Doc. 17), and Defendants' Reply (Doc. 19). The Court now rules as follows.[1]

## I.    BACKGROUND

Kyle Welsh and Jill Welsh, brother and sister, were members of the Colorado River Indian Tribes ("CRIT") who both possessed membership interests in WW Young Money, LLC d/b/a Flame On Indian Smoke Shop (the "Smoke Shop"), which did business in Parker, Arizona on the Colorado River Indian Tribal Reservation.[2] (Doc. 1 ¶¶ 1–3). On March 1, 2015, Kyle and Jill Welsh entered into a five-year lease agreement (the "Lease Agreement") with CRIT for occupancy of space to run their Smoke Shop at the Moolyava

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Because Ms. Welsh has passed away, she is represented in this action by her Estate. (Doc. 1 ¶ 2). The three Plaintiffs in this action are Kyle Welsh, Estate of Jill Welsh, and WW Young Money, LLC d/b/a Flame On Indian Smoke Shop (collectively, "Plaintiffs").

Plaza in Parker, and in April 2020, the lease was renewed for an additional five-year term to expire on February 28, 2025. (*Id.* ¶¶ 10–11). Plaintiffs' Smoke Shop was licensed with CRIT and the Arizona Department of Revenue for tax-exempt tobacco sales on the CRIT Reservation. (*Id.* ¶ 13).

Defendant Rebecca Loudbear ("Loudbear") is the Attorney General for the CRIT; Defendant Amelia Flores ("Flores") is the Chairwoman of the CRIT Council, and Defendant John Yackley ("Yackley") is the former manager of the CRIT-owned Moolyava Plaza. (*Id.* ¶¶ 4–6). On April 8, 2021, prior to the expiration of Plaintiffs' five-year lease term, Defendants Loudbear and Flores sent a letter terminating Plaintiffs' lease at the Moolyava Plaza. (*Id.* ¶ 17). Defendants' letter, which was sent with official CRIT letterhead, stated that notice of termination was given for violations of the Property Code of the CRIT, including occupation of premises without permission following a demand to leave, nonpayment of rent, and nuisance and damage to property. (*Id.* at 26 (Ex. 3 to Compl.)). Plaintiffs dispute each of the stated bases for termination of the Lease Agreement. They maintain that this was an illegal termination of lease notification constituting mail fraud and wire fraud, and that the unlawful termination was used to extort money from Plaintiffs and convert the Smoke Shop. (*Id.* ¶¶ 17–24). Accordingly, Plaintiffs contend that from about April 8, 2021 "and continuing thereafter," these Defendants "and others, presently unknown," formed the "Running Man Criminal Organization" enterprise through a pattern of racketeering activity meant to "destroy Plaintiffs and their lease, and their business, and to cause it to be overtaken by others." (*Id.* ¶¶ 14–16).

Furthermore, Plaintiffs contend that Defendants "coordinated their efforts in a conspiracy to seek the false imprisonment of Plaintiff Kyle Welsh by providing false information to federal law enforcement authorities, which resulted in the issuance of a federal warrant and the prosecution of fictitious criminal charges against Kyle Welsh." (*Id.* ¶ 25). Mr. Welsh was arrested in Las Vegas, Nevada, and incarcerated in Florence, Arizona, for nearly one year "because of Defendants' wrongful acts and false reporting." (*Id.* ¶¶ 26–27). It appears that some of these events referenced in Plaintiffs' Complaint are

the same events that led to Mr. Welsh's criminal prosecution in this Court, *see United States v. Welsh*, No. CR-21-00316-001-PHX-SPL.[3] In that case, Mr. Welsh pled guilty to CIR-Assault with Intent to Commit Flight to Avoid Prosecution, 18 U.S.C. §§ 1153 and 113(a)(2). *Welsh*, No. CR-21-00316-001-PHX-SPL (Doc. 56 at 1). Mr. Welsh admitted in his factual basis that "[o]n or about February 27, 2020, within the confines of the Colorado River Indian Tribes reservation . . . [he] intentionally assaulted the victim . . . by striking the vehicle he was in with [his] own vehicle . . . with the intent to commit felony flight to avoid prosecution." (*Id.* at 7).[4] This incident was referenced in the letter terminating Plaintiffs' lease, as CRIT Property Code Section 1-301(d) provides that intentional or reckless damage to a landlord's (here, the Tribe's) property is grounds for eviction. (Doc. 1 at 27). Mr. Welsh was ultimately sentenced to time served and placed on supervised release, which has since been terminated. *Welsh*, No. CR-21-00316-001-PHX-SPL (Docs. 65, 71).

On April 5, 2025, Plaintiffs filed a Complaint (Doc. 1) in this Court asserting two RICO claims. Plaintiffs allege that Defendants engaged in a pattern of racketeering activity based on the predicate felony acts of Interference with Commerce by Robbery, Extortion, Threats, and Violence in violation of 18 U.S.C. § 1951; Obstruction of Justice in violation of 18 U.S.C. §§ 1503, 1510; Theft in violation of 18 U.S.C. § 661; Obstruction of a Criminal Investigation in violation of 18 U.S.C. § 1510; and Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341, 1343. (Doc. 1 ¶ 52). On June 24, 2025, Defendants filed the instant Motion to Dismiss (Doc. 16), arguing that the Complaint should be dismissed

---

[3] To that end, Defendants argue that "Plaintiffs' repeated references to [Mr. Welsh's] incarceration suggest that this case may also be an improper collateral attack on the criminal case against him brought by the United States, as success on the RICO obstruction claims would necessarily imply that the prosecution was invalid." (Doc. 19 at 9).

[4] It is unclear how Plaintiffs' statement in the Complaint that "[Mr.] Welsh denies causing any damage to CRIT property" comports with this sworn statement, as Mr. Welsh pled guilty and was incarcerated for striking a CRIT Tribal Police Officer's official vehicle. (Doc. 1 ¶ 35). Similarly, Plaintiffs' argument that "Defendants' conduct resulted in Welsh's incarceration" (Doc. 17 at 5) seems to sidestep the fact that Mr. Welsh knowingly and voluntarily pled guilty to a criminal offense.

in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(7) for failure to join a required and indispensable party, and under Rule 12(b)(6) for failure to state a claim. The Motion is now fully briefed and ripe for review.

The Court will dismiss this action for lack of subject matter jurisdiction because the CRIT, which is a necessary and indispensable party, has tribal sovereign immunity. Accordingly, the Court does not reach Defendants' Rule 12(b)(6) arguments here. *See, e.g.*, *Ball v. Pechanga Econ. Dev. Corp.*, No. EDCV 23-84 JGB (SPx), 2023 U.S. Dist. LEXIS 69557, at *10–11 (C.D. Cal. Apr. 20, 2023) ("Because the Court finds dismissal appropriate under Rule 12(b)(1), the Court need not reach Defendants' additional argument for dismissal . . . .").

## II.    LEGAL STANDARDS

### a.  Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction to hear the claims at issue. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and may only hear cases falling within that jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction 'can never be forfeited or waived' and federal courts have a 'continuing independent obligation to determine whether subject-matter jurisdiction exists.'" *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

### b.  Rule 12(b)(7)

A party can move for dismissal under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). The Court follows a three-step analysis to determine if dismissal is appropriate. *See EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, the Court must determine if the party is "necessary" pursuant to Rule 19(a). *See Dine Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 851 (9th Cir. 2019); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985). Second, if

the Court determines that the nonparty is necessary, it must then determine if joinder of the nonparty is feasible. *See Peabody*, 400 F.3d at 779. If joinder is not feasible, the Court must then determine if the party is "indispensable" pursuant to Rule 19(b). *Id.* If the Court reaches the final step of the analysis and concludes that the party is indispensable, then the complaint should be dismissed. *See id.*; Fed. R. Civ. P. 19(b). This analysis is "practical" and "fact specific." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

"Under Rule 12(b)(7), the court may also consider extrinsic materials attached to the motion." *Cemco, LLC v. KPSI Innovations, Inc.*, No. C23-0918JLR, 2024 U.S. Dist. LEXIS 15406, at *4 (W.D. Wash. Jan. 29, 2024).

## III.   DISCUSSION

The threshold jurisdictional issue this Court must consider is whether this case is barred by tribal sovereign immunity. "Tribal sovereign immunity limits a federal court's subject matter jurisdiction over suits against an Indian tribe." *Cain v. Salish Kootenai Coll.*, No. CV 12-181-GF-BMM, 2014 U.S. Dist. LEXIS 203339, at *4 (D. Mont. Dec. 3, 2014) (citing *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015–16 (9th Cir. 2007)). "Tribal sovereign immunity protects tribes from suit absent clear waiver by the tribe or express authorization by Congress to abrogate tribal sovereign immunity." *Id.* (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)). Tribal immunity also "extends to individual tribal officials acting in their representative capacity and within the scope of their authority." *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985); *see also Cook v. AVI Casino Enters.*, 548 F.3d 718, 727 ("[A] plaintiff cannot circumvent tribal immunity 'by the simple expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity.' (quoting *Snow v. Quinalt Indian Nation*, 709 F.2d 1319, 1322 (9th Cir. 1983)). In the context of a Rule 12(b)(1) motion to dismiss on the basis of tribal sovereign immunity, the party asserting subject matter jurisdiction has the burden of proving that immunity does not bar the suit. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

Here, Defendants argue that although Plaintiffs' claims are brought "against the

Tribal Defendants in their alleged 'individual' capacities . . . the pleaded facts show Plaintiffs seek to hold the Tribal Defendants liable for actions taken in their official capacities under tribal law." (Doc. 16 at 4). First, they argue, Plaintiffs signed the Lease Agreement in question with the Tribe, not the individual Defendants. (*Id.* at 5; Doc. 1 at 26 (lease termination letter with tribal letterhead)). Second, that lease was terminated under tribal law, and the termination letter explicitly cites numerous provisions of the CRIT property code, so the monetary damages Plaintiffs seek would necessarily interfere with tribal self-governance. (Doc. 16 at 5).

Plaintiffs, however, contend that these Defendants are sued in their individual capacities, and that tribal sovereign immunity is therefore not implicated. (Doc. 17 at 2). Because Defendants "acted outside the scope of their authority in shutting down Plaintiffs' smoke shop," they were not acting their official capacities, and therefore cannot be immune from suit. (*Id.*). Plaintiffs note that they "are not seeking relief under the lease . . . [n]or are they seeking money damages from CRIT." (*Id.* at 3). Plaintiffs argue that Defendants' tribal positions of authority "do not immunize them from liability caused by their tortious or criminal conduct." (*Id.*).

The pertinent question, then, is whether Defendants were acting in their representative capacity and within the scope of their authority when the alleged conduct occurred. This is a case where "it is difficult to view the suit against the officials as anything other than a suit against the [Tribe]." *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991). The Tribe, as landlord, clearly had the authority to enforce its Property Code and to lawfully terminate the lease—Plaintiffs do not dispute that; they assert instead that the termination was itself unlawful. *Cf., e.g.*, *Miller v. Wright*, 705 F.3d 919, 927 (9th Cir. 2013) ("The Tribe counters that the officials act in their official capacity when they collect the Tribe's taxes, which the officials have the authority to impose."). The Lease Agreement specifically stated that the lease would be governed by the laws of the CRIT, and that any "disputes between Landlord and Tenant relative to rights, obligations and duties of either party under this Lease . . . shall be heard in the Tribal

Court of the Colorado River Indian Tribes." (Doc. 1 at 19). Much of Plaintiffs' Complaint focuses on their contention that termination of the lease was wrongful (and part of a larger RICO conspiracy) because the three cited violations were "false and fraudulent." (Doc. 1 ¶ 30). The proper avenue for Plaintiffs to have challenged the lease termination would be the Tribal Court of the CRIT. For this Court to now decide that the termination was wrongful would impede the Tribe's ability to enforce its own Property Code and its own contracts. And Plaintiffs' claim that they are "not seeking relief under the lease" is unavailing. (Doc. 17 at 3). The first remedy sought in the Complaint is for "compensatory damages in an amount sufficient to make Plaintiffs whole for the loss of income, lost profits and reimbursement for lost property and inventory . . . ." (Doc. 1 ¶ 62(A)). In other words, Plaintiffs seek damages for the loss of income and inventory from their Smoke Shop. Clearly, "[t]he remedy sought would operate against the Tribe itself." *Cain v. Salish Kootenai Coll.*, No. CV 12-181-GF-BMM, 2014 U.S. Dist. LEXIS 203339, at *31 (D. Mont. Dec. 3, 2014).

In determining whether the Tribe is a necessary party to this action under Rule 19, the Court must consider whether it can accord complete relief among existing parties without the Tribe, or whether the Tribe has a legally protected interest in the action. *See* Fed. R. Civ. P. 19(a)(1); *Dine Citizens*, 932 F.3d at 852. In this case, "[t]he Complaint itself establishes that the Tribes represent the 'real, substantial party in interest.'" *Lanny v. United States BIA*, No. CV-20-75-GF-BMM, 2021 U.S. Dist. LEXIS 199239, at *13 (D. Mont. Oct. 15, 2021) (citation omitted); *Save the Valley, LLC v. Santa Ynez Band of Chumash Indians*, No. CV 15-02463-RGK (MANx), 2015 U.S. Dist. LEXIS 181545, at *10 (C.D. Cal. July 2, 2015) ("[T]ribal immunity precludes claims where the 'real, substantial party in interest' is actually the tribe, and the officers are merely attached as nominal defendants in an attempt to circumvent tribal immunity."). It is clear that the Tribe, which both executed and terminated the Lease Agreement with Plaintiffs, has a legally protected interest in this action. *See, e.g.*, *Sprawldef v. City of Richmond*, No. 18-cv-03918-YGR, 2019 U.S. Dist. LEXIS 102812, at *12 (N.D. Cal. June 19, 2019) (finding that a tribe

had a legally protected interest "in the matters at issue in the petition because granting the petition would void its settlement agreement with the City. The relief sought—voiding an existing agreement under which the Tribe has both a monetary entitlement to sale proceeds and an option to acquire . . . real property—would interfere with those interests and obligations as a practical matter.").

The Court must therefore determine, at the second step, whether it is feasible to order the Tribe to be joined in this action. *Peabody*, 400 F.3d at 779. Here, because the Tribe's sovereign immunity would destroy subject matter jurisdiction, the Court proceeds directly to the third part of the Rule 19 inquiry to determine whether the case should nonetheless proceed in the absence of the Tribe. *See id.*; Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."). If it cannot proceed, a motion to dismiss under Rule 12(b)(7) for failure to join a party is properly granted.

Rule 19(b) sets forth four factors for this Court to determine whether the case should proceed without the Tribe: (1) the extent to which a judgment rendered in its absence might prejudice it or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in its absence would be adequate; and (4) whether Plaintiffs would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b)(1–4). Although tribal sovereign immunity does not entirely dispense with the need to balance the four Rule 19(b) factors, *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002), the factors almost always favor dismissal where a tribe cannot be joined due to its sovereign immunity, *Deschutes River All. v. Portland GE*, 1 F.4th 1153, 1163 (9th Cir. 2021). Here, too, dismissal is the only proper solution—no judgment rendered in the Tribe's absence could be adequate when the Tribe is the real party at interest in this suit. The Court agrees with Defendants that "[a]ny judgment will prejudice the Tribe's sovereign interests in enacting

8

its own laws, negotiating contracts under those laws, and interfere with the public administration of those laws." (Doc. 16 at 7–8).

The Court need not proceed to analyzing whether Plaintiffs' RICO claims survive dismissal under Rule 12(b)(6), as it has determined that the entire suit is barred by tribal sovereign immunity.

### IV.    CONCLUSION

"The bar of sovereign immunity is 'absolute,' and therefore dismissal with prejudice is appropriate when it applies." *Pechanga*, 2023 U.S. Dist. LEXIS 69557, at *8 (citation omitted).

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 16) is **granted**, and the Complaint (Doc. 1) is **dismissed with prejudice**. The Clerk of Court is directed to enter judgment accordingly and **terminate** this case.

Dated this 15th day of August, 2025.

Honorable Steven P. Logan
United States District Judge